May it please the Court, my name is John Burgess and I represent the appellant, Mr. Williams, in this matter. I'd like to reserve three minutes for rebuttal. Please watch your time, counsel. Thank you, Your Honor. Mr. Williams asked this Court to reverse the trial court's granted summary judgment on his claims of excessive force against Sgt. Baskett. Here the Graham factors weigh heavily in favor of Mr. Williams because the uses of force here were clearly significant or intermediate under case law and the government interest was low. Mr. Williams was unarmed and posed no threat to officers. Well, counsel, that's a bit of an overstatement, is it not, based on the information that was available and known by Sgt. Baskett at the time? Well, no, I wouldn't agree with that. The problem with that, first of all, is that the statements that were made about Mr. Williams in the BOLO or the beyond the lookout information that was available to Mr. Williams at the time that the stop was effected was actually a series of generalized statements, some of which turns out to be false, but about Mr. Williams. The question is what would a reasonable officer have thought? And in reliance on the officer safety alert in the beyond the lookout bulletin, he was essentially told that this guy posed a threat, that he was a runner and would likely flee. He did have, in his past criminal history, some violent crimes in addition to primarily forgery and so on. And this case... Well, there's actually no evidence in the records. Let me change my question. I'm sorry. We have to look at the evidence that was presented to the officer at the time. We can't look at what proved to be true and what proved to be not true. So let's focus on at the time of the incident. So the rest of my question was that this case seemed to present some additional facts with regard to officer safety that were not present in some of the cases that you cited from our State Circuit precedent. Well, so I think that, I mean, the key is that under the Graham factors, the analysis, you know, involves a question of whether the suspect poses an immediate threat of safety. And presumably based on the case law, that means at the time that the stop is effectuated, not some generalized statement about his past. Well, and counsel, police officers don't act in a vacuum. They operate on the basis of whatever information a reasonable officer would rely on. And one of the things that Sergeant Baskett was told was that this guy would probably try to elude or evade arrest if he tried to stop him. And we all know that that can lead to high speed chases and that sort of thing. So it seems to me that the officer had some reason to expect trouble from this guy when he tried to stop him. Right. And I don't, I mean, there's, I don't think there's any dispute that he had some basis for concern. The question isn't, did he have some basis for concern, is did the concerns rise to the level to warrant the uses of force that were actually put in force in this case? And so when we talk about the information available to him at the time, he was following Mr. Williams in a car. He then made no attempt to pull him over and in fact, went the wrong way around a roundabout and then crashed into the front of his car. He'd been told that Williams knew that the police were looking for him, right? Well, I don't, I don't know that that's in the record. I didn't make it up. Right. Fair enough. I can assure you it's in the record. I agree that it's in the record that it's stated that he might flee and that there was a warrant for his arrest, whether or not Mr. Williams... But I thought the Kaiser officer had, the teaser, Kaiser, I'm probably not pronouncing it. Kaiser, you're right. Kaiser. I thought the Kaiser officer had told him that Mr. Williams knew that the police were looking for him, but that he was driving his girlfriend's Mercedes in the hope that maybe they wouldn't recognize that that was a vehicle that was associated with him. Well, off the top of my head, I don't, I can't gainsay that assertion. That may well be the case, but I don't think it's actually, I mean, I don't think it affects the analysis here as to whether or not... Of course it does. If, if, if he was aware that the police were looking for him, then there's even more reason for officer safety. Right. I agree that there's, that there, I don't dispute that there are concerns about that he, Sergeant Baskett had a reasonable concern in his mind or may have, or had at least had a objective basis for being concerned about the suspect fleeing or being uncooperative based on what he was told in the Bolo. Is it your position that the force used to stop the car was excessive? I, yes, that is plaintiff's position or the Well, so I don't see how, I mean, police officers pull people over all the time who have warrants for their arrest. Typically... If they stop. Right. But the no information available to him based on Mr. Williams' demeanor at the time while driving would have... Well, he might have ran the stop sign. Well, the information I think is ambiguous about whether he actually stopped or didn't. He doesn't know whether there was a stop sign there or not. So it's unrefuted if the officer testified there was a stop sign and he ran it, isn't it? That's not, there's no material issue of disputed factor. Your client can't dispute it. He doesn't remember. That's correct. Okay, so what's about a seven mile an hour contact between the Mercedes and the push bar of the police cruiser? And then another officer pulls up behind him to prevent him from backing up and making good his escape. And your position is that's excessive force. And I'd like to hear your answer to Judge as you mentioned, I think would have been a reasonable maneuver if he had concerns about him fleeing. But that isn't what happened. What happened is... The issue is whether the force used was excessive in this instance. Whether using the car to stop his further passage was excessive force. That's the question. It's excessive force because it has the possibility of causing serious injury to drive. Is that the test? Well, I think that it's a part of the analysis to determine whether, I mean, the reason why, for example, shooting a gun at somebody is or near somebody or using weapons has, for example, during the, in the Ninth Circuit's analysis of whether or not a taser constitutes intermediate force, the court has already determined that it is based in part on the fact that it can cause serious harm and reject it. It's all fact-based, based on the fact, the individual facts of the case. So we can't just have general principles. It has to be based on the facts. So in this case, the issue is whether the force used was reasonable under the facts confronted by the officer. And so I'm asking you, why was the stoppage of the car at a slow speed impact unreasonable in light of the facts known by the officer? Right. I guess the appellant's position is that positioning the vehicle in a way that would have prevented escape would not have That it was unreasonable force in view of the facts known to the officer to use his vehicle to impede the further progress of the car. Well, we've cited to a few cases. Tell me your strongest case to support the proposition that under the facts of this case, when the police officer had advanced knowledge that the perpetrator had been known to flee, that it was unreasonable force to use a slow speed contact to impede the further progress of the vehicle. What case says that? Your best case. I mean, the cases that I've cited, admittedly did not, you know, Clement and Wilkins did not involve low speed interactions. That's the point. The Supreme Court has told us that we have to look at similar cases in determining whether or not the force used rises to the level of excessive force. So I can't speak for the other panel members, but for me, that's not your strongest argument. The collision with the car. Well, I concede that that isn't the strongest claim for excessive force in this case. I don't think there's any. What is your strongest claim? Well, I And on the tasering, what is your best case for saying this was clearly established precedent? That's the most factually similar that, in your view, is not materially distinguishable under the Supreme Court standard. Right. Well, I think that Mattos and Gravelit Blandon are probably the closest in terms of factual similarity. Mattos was just a woman who was stopped and refused to sign the ticket. Right. Well, she also stiffened her arms and refused to be pulled out of the vehicle and refused to open her door and refused actually physically resisted being removed from the vehicle, which Mr. Williams did not do. So, in fact, every case that we cited with respect to the qualified immunity question involves significantly more resistance than anything that Mr. Williams did. I think that it's really telling. I mean, so, for example, in Coles, I'd say Coles is probably the most similar with respect to the dragging him through a broken window and throwing him to the ground, since that's essentially identical to what happened in Coles. In Coles, the court, we just sent it to a jury. We didn't actually hold as a matter of law that it was an excessive force. Is that correct? Yes, I think that's right. But I think that the 11 years that have, you know, transpired since that would give the officer, you know, notice that it was clearly established that this would violate or that it would violate. Do you think that it was clearly established that under the facts of this case, the force used was excessive? I think that it was clearly established that dragging somebody through a window when they're not when they're passively resisting constituted a use of force in response to passive resistance that that could violate. We forgot about the gun, didn't we? Mattos did not have a gun secreted in the car. And the officer had been told this guy had been seen in possession of a firearm and that he would likely have it in the vehicle. That kind of ramps up the officer's safety concern, does it not? I dispute, well, I dispute both of those First of all, it wasn't secreted in like saying that implies that it would have been accessible to Mr. Williams during which it wasn't. It was in the trunk. But the officer couldn't know. Right. But the officer also was never told that it was likely to be on his person in the vehicle. It said that he was commonly in possession of a firearm, a gun that had a painted. Isn't that a gun? What do you need? He carries a gun. Well, I don't read that as what is being stated. If a reasonable police officer wants to go home at the end of his shift, he better make that assumption or he's going to he's not going to come home. Right. I mean, 30, some 40 percent of Americans own firearms. I don't think that that allows concern. I mean, our cases clearly say that the the presence of a weapon or the reasonable inference that there is a weapon raises a safety concern for officers. Well, and I've already conceded I don't it's not my position or it's not appellant's position that being told that he was in possession of a firearm didn't was had a zero impact or wasn't was irrelevant. The point is just saying he had a gun is not quite accurate. First of all, the gun was in the trunk. It wasn't even the officer wouldn't know that. Right. But the officer didn't know anything about the about the actual why the officer had concerns, because if you don't know where the weapon is, it's reasonable to take preventive measures to keep the individual from ever being able to access the weapon. That's the difficulty that you're confronting in the cases that we have. Right. And the problem with that, with respect to this case, is that once Mr. once Sergeant in place, his arms were up and he was not moving. And it's also so there was and that he was not reaching for anything. And at that point, the gun was in a bag or something that was on the right front passenger seat. No. Where did the trunk come from? The tell us the record site, because it's easy to have recollection. I don't have ready access to that at the moment, Your Honor, but I'd be happy. I'd be in the trunk and was obtained after he was already arrested in the squad car gun in the passenger seat. What's that? There wasn't there a replica gun in the passenger seat. That's not my that's what I read. It was a model 1911 45 automatic replica that looked very My understanding is that there's only one one weapon at issue here. That's it, isn't it? I didn't make it up, counsel. I'm not I'm not accusing you of any such time. We would have expected you would know the record when you came here. So we won't take your time for you to find it. We can find it. All right. May it please the court. I'm Tom Christ. I represent Sergeant Basket, and I'd like to take up the argument just where it left off. You were asking about the record in the gun on ER 187 to 188. My client's declaration said that they found a replica 1911 style handgun with an orange tip somewhere in the car. It doesn't identify where it was in the car. That could include the trunk then, correct? It could include the trunk. The issue of the gun in the trunk is news to me. If it's in the record somewhere, I don't know where that is. There was additional testimony that there was a real gun in the car at some point in time, and this is from plaintiff's deposition. It's not real clear testimony. It's fuzzy about when, but there was, he did say, I had a gun in this car, first in the glove box, then in a bag at some point in time. Again, I'm not clear when it is. Not And the record doesn't include a full inventory search of the contents of the car, but Officer Basket does say he found a replica gun. The important thing, I think, for purposes of this case is that he was told and had reasonable grounds to believe that plaintiff was in possession of a gun, and that he had, in the past, been arrested for felon in possession of a gun, for resisting arrest, and perhaps most importantly, for using, having or using a loaded gun in a vehicle. That's the information presented to my client before these incidents. He was also told by the Kaiser police officer that the plaintiff was likely to flee in his vehicle if he attempted to arrest him in the vehicle, which is why my client decided not to pull him over from behind, but what I think is really clever is when he saw him go into this traffic circle, at what he said, cautiously, at a slow speed, 7 miles per hour, from which he slowed even further, my client decided, I'll go around the other way and block him in. Okay. Counsel, can we skip ahead to what I think is plaintiff saying his strongest argument, which is that after he was stopped, he was in the car with his So I holstered my gun, right, and I knew my backup, I knew the other officer had his gun trained on Williams. Why, at that point, and then if we are in summary judgment and resolving all factual disputes in favor of the plaintiff, then we have to say that the officer never commanded Williams to get out of the car. Instead, the officer just breaks open the window, tazes him, and pulls him out and throws him to the ground. And since we're on summary judgment, the district court also assumed that he, in fact, slammed him to the ground. So why was that use of force not, why couldn't a reasonable jury find that that force was excessive, given that at that time, the officer had determined that Williams was not Well, some of the facts you just recited, we would dispute. But that would go to a jury then, correct? Dispute in this sense, what I mean is that there's no evidence from the plaintiff that he obeyed all commands. Well, his declaration said the officer never told me, according to his declaration, the officer didn't tell him to get out of the car. So that's a material, factual dispute. I believe that his declaration didn't go that far. But in any event, there is, yes. When my client approached the car, says, you're under arrest, we've got a warrant for your arrest, and this is undisputed, he says, show me the warrant. So he knows that he's under arrest, there's a warrant. He gets back in the car, he shuts the door. I believe the evidence will show, and it's not disputed by plaintiff, but from both officers, my client and Officer Heyman, told him to get out of the car, and he refused to get out of the car. Okay, but that doesn't answer my question, because we're on summary judgment. So we're assuming that command was never issued, because that's a material, factual dispute, and that the officer had determined that Williams was not reaching for anything, and Williams said he had his hands up. At one point in time, he's not reaching for anything, but he could, at any point thereafter, reach for something. And my client believes that there's a gun in the car, and it would be accessible for him. And so if at this moment in time, he's not reaching for it, nothing would stop him from reaching for it at any point in time thereafter, if it's in the car. And my client thought it was in the car. So at that point, he decided to forcibly remove him from the car. He's not getting out voluntarily, and remember, he got out, went back in, shuts the door, and is sitting in a vehicle where my client thinks he's got a gun. Was he ordered to get out of the car? My client and Officer Heyman both say in their declarations that he was told repeatedly, get out of the car, and he refused to get out of the car. If that's a material, factual dispute, why wouldn't that have to go to a jury? I guess what I'm saying, and I'm sorry if I'm wrong, but my recollection is they don't dispute that he was told to get out of the car. If they do, would they have to send that to a jury? No, that's not enough. Because whether he is refusing a command to get out of the car, he is not getting out of the car, he got back in it, he is not out of the car. Whether he's refusing a command or not, he's in a car with, my client believes, easy access of a weapon which could be loaded. Then your client also says he determined that Williams wasn't reaching for anything. Williams says his hands were up, and your client says in his declaration, I determined he wasn't reaching for anything, that's why I holstered my gun. So he seemed to not feel threatened anymore at that point, and he knew that the second officer had his gun trained on him. I wouldn't say he's not feeling threatened at that point. Yes, he's not got a gun in his hands, but he might have a gun on the seat right next to him. So at that point in time, yes, my client broke the window, and then according to plaintiff, the two officers pulled him through the broken window and body slammed him. Now, that's what he said, but it is inherently implausible that a 6 foot 2 inch man, 260 pounds, would have been pulled through the window. Okay, so he can, I know that it's summary judgment, and you can say in a declaration anything, but if a declaration says But we have to take those facts in a light most favorable to him. It's not unheard of for police officers to get training in how to do this, regardless of their size. And so it is not implausible that a police officer can haul a sizable person through a window. They're trying to do that. I think it's implausible. Well, I don't know about mine. Does Officer Baskin deny that he pulled him through the window? Pardon me? Is there a dispute that he got pulled through the window? The way this works is we file a motion for summary judgment, and the two officers submit declarations saying only that he was removed from the vehicle. Plaintiff then, in his responding declaration, says, I was removed through the window and slammed to the pavement. So if we're in the land of factual disputes, we're not in the land of summary judgment, right? So you have to assume, as the district court did, that he got pulled through the window and slammed to the ground, right? Yes, but I just For the purposes of this argument. Yes, for purposes of this argument, but I still want to make this point. I think it's inherently implausible, and just because a declaration declarence says something, you do not have to believe it if it is implausible. If a declarence says the pig flew over the fence and escaped the farm. Well, that's not what we have here. Okay. We have the officers saying they removed him through the window. No, removed him from the car. From the car. He says, yes, they removed me through the window. So there's not, it's not pigs fly territory. Okay. It's just how he was removed. So he's removed from the vehicle, and he fell to the pavement. They say he was body slammed. I mentioned this in the brief. There's nothing to support that, which is lifting somebody overhead and throwing them down. He complains of no injury from these encounters at all. Counsel, these are jury matters. So these are arguments that you would make to the jury. But if we are to construe the facts in the light most favorable to the plaintiff, we can't weigh what's plausible, what's implausible, who's credible, who's not credible. The plaintiff in this case has no obligation to disprove anything. We are to dispute anything. Our case law says that. We take the facts in the light most favorable to the plaintiff, and any inferences that are to be drawn have to be drawn in favor of the plaintiff, not in favor of the defendant, for purposes of this analysis. I understand that standard review, and I accept your point that it's not implausible he was pulled through the window. But the facts are that he complains of no injury from the removal from the car. He complains of no injury throughout this whole encounter. That is a fact. Doesn't he complain that it exacerbated an existing injury? Well, in handcuffing, and then they released the handcuff, but he went to the hospital solely for an injury to his wrist that preexisted this incident. He complains of no injury from this incident, including the body slamming, if that's what happened. And it's not just the jury argument here. Your burden, like the trial judge's, is to figure out under these circumstances, was this excessive, and you have to measure the force inflicted upon him. And if there's no injury, that is some evidence that it was not a significant application of force. Is there a case that says if there is no injury, that militates toward a finding that the force was not excessive? What case says that? There's no case.  that maybe you were not, that the force wasn't excessive, that it wasn't extreme if it didn't even injure you. No bruise, no scratch, nothing. It's hard to say that the force was excessive if you were unharmed through the event, is my point. I thought there was some testimony that at the hospital, or maybe it was at the jail, he was talking with the officers and essentially, I don't know what the word is, agreeing that they acted reasonably based on what they knew about him. Yes, I recall something to that effect. What page of the record? I didn't include it in my brief because I thought, and this maybe is helpful to my opponent, but it seems to me that discussions after the fact about what was reasonable or not isn't really your decision. You don't think that would be an admission against interest by the plaintiff if shortly after the incident he's saying to the officers, I think you did your job properly or whatever it was. I mean, the way I read it was that he wasn't complaining about how he was treated. I think that that is further evidence to support of my point that he was not harmed. He wasn't injured in the process. So whatever the force was, and there was some force. He was physically removed from the vehicle. He didn't get out voluntarily. There was some force to get him out. Was the window broken? Yes. Was the window broken? Okay. But it was minimal. It's not like your other cases cited in the briefs where they tase somebody and he falls over and breaks his teeth. Well, my trouble here is that you say it's minimal. He says it wasn't minimal because he was pulled out through the window and slammed to the ground. So it seems to me that's something that we can't resolve as a factual dispute on summary judgment. You do it all the time because that's the test for you. I assume that what we do all the time is assume his version of the facts and then decide. Yes. Take his version of the facts, and his version of the facts is throughout this process I was uninjured. Okay? I didn't get hurt in this process. Why would he say that he was uninjured? Because he doesn't allege any injury. That's a negative. He doesn't have to say I was uninjured. That's not part of construing the light facts and the light most favorable to him. You're assuming a negative. But we have to go by what he said. He doesn't have to say I was injured. He doesn't have to say I was injured in order for the force to be considered excessive. There's no case that says that. The fact of an injury is one indicia of the force applied. And when we move for summary judgment saying under this test, compare the severity of the force to the government's interest on the other side, you have to weigh those things, and so you have to determine how much force and how severe. Yes, he said how much force. He said he was dragged through the window and body slammed to the ground. But not injured. He didn't say that. He didn't say that. He didn't say I was uninjured in the process. The record doesn't show that. And he does not have an obligation to refute any inference that may be drawn from his failure to say that. I'm over my time.  Yes, please. His burden under the case law is to establish that the force was severe. And one way to do that is to establish. That the force was unreasonable. It doesn't have to be severe. Unreasonable. And one way to do that is to measure the severity of the force. And if you just touch somebody on the shoulder, that's one thing. If you punch him in the shoulder, that's another. And if there's some evidence that the punch broke his shoulder, that's further evidence all in support that this was an excessive amount of force. Isn't that an argument to the jury? That he wasn't, in fact, injured. So his claim, his allegation that he was body slammed, dragged through the window and body slammed is not true. But that's not a dispute that we can resolve on appeal from summary judgment, is it? Yes, you can conclude that there is no evidence that he was injured. So there's no evidence of a substantial application of force in response to a very real threat that my client had. That plaintiff who resisted arrest before, who had guns before, who may have a gun in the car, had a gun within reach. Okay. We understand that. All right. Well, the record doesn't show he had a gun within reach. I thought you said that there was a gun within the car somewhere. There was. The record shows there was a replica gun in the car. It was found afterwards. It doesn't show whether there was a real gun in the car. But under your case law, including the one I cited in a letter of additional authority, whether there's a gun doesn't matter. What matters is whether my client. You said that there was a gun in the car. So if it doesn't matter, you said it. Sorry. My client thought there was a gun in the car, reasonably believed there was a gun in the car, based on information he had, and really it would be an impossible burden to put on police officers to figure out whether that information is true or not. We never said that was the test. All right. Thank you, counsel. Thank you. And I did just one of the issues that was raised both during my arguments and the opposing counsel's. I did want to point the direct to the actual record. So the only gun that was referenced by Sergeant Baskett is on ER 187 and 188. He mentions that in addition to some other items, that a replica 1911 style handgun with an orange tip was located, but it doesn't say in his declaration where, but it doesn't indicate that an actual firearm was ever recovered from the vehicle. So I just want to be. Does the declaration say that the replica firearm was within reach? No, it doesn't say anything about where it was. Right. And I apologize for not having ready to hand the statements about where Mr. Williams says that it was. But I did also just want to point out, I guess, you know, the statement from Baskett that he broke the window, tasered him twice, and then dragged him through the window, the reason why all of that happened was out of a concern that he was reaching or would reach for a weapon, is belied by his own conduct, which is that he holstered his weapon. Because the other officer was covering him with his firearm. I mean, it looked to me like it was perfectly reasonable for Sergeant Baskett to holster his firearm in order to affect the full physical custody arrest of Mr. Williams. Well, in his own statement, he had concluded that it's not that it wasn't a negative, it was a positive. Baskett says in his declaration and his testimony in the record in this case that he saw that he wasn't reaching for anything and that he was complying with his directives not to move. But wasn't Officer Ammons on the other side of the car with his weapon on hold? I don't believe there's anything in the record indicating whether or not Ammons was pointing his firearm at Mr. Baskett. If he was, Mr. Williams was unaware of it, from what I can tell. But I think that the other issue is that the statement about the suggestion that he, and this goes to Judge Sung's point, which is that there was reference made about the factual dispute as to whether or not the officers told him to exit the vehicle. And I think that it's worth noting that it's also just inconsistent with Baskett's own account of what occurred, which is that he approached the vehicle and in one, by the district court's characterization, in one continuous movement, holstered his, approached the vehicle, holstered his weapon, flicked out his baton, broke the window, tasered him once, tasered him a second time, and then dragged him out through the broken hole of the window. Is there any testimony about whether or not the door was locked? So that's another issue that I was going to reference earlier. So repeatedly in the appellee's brief, there's reference suggesting that the door was locked. The only testimony on this subject at all, positive or negative, comes from Mr. Williams' own deposition testimony where he said that as he returned into the vehicle, because at that moment he didn't know the person who was pointing a gun at him was a police officer. So he locked the door. That he thought he should lock the door. He doesn't testify that he actually locked the door. There was no follow-up deposition questions to confirm whether it happened. And nobody asked the officer on deposition, well, did you try to open the door? Well, this was a pro se litigated case prior to my involvement. So the answer would be no. Right. The answer was no, Baskett. Right. And then also in Baskett's declaration on summary judgment in this case, he never states that the door was locked or that he tried to open it and that it was locked. And so we can't take we can't give that any weight, that there was that he had like locked the door to like barricade himself in. And I think in any case. Counsel, let me ask you this question. What is your response to opposing counsel's position that Mr. Williams was not injured? So that's an indication that the foreshoes was not excessive. Right. And so I think what I'd like to point out in response to that is that at ER 62 paragraph 19, which is the last paragraph in the document, Mr. Williams in his declaration in response to summary judgment states that when we arrived at the Salem hospital, that the hospital staff ordered an x-ray, that they came back with no broken bones, but that there was significant soft tissue damage. So the nursing staff asked Eamon to keep the cuffs off that hand, which he did. And so there is testimony about physical harm, although I agree with your characterization, which is that there's no case law suggesting that he has to have sustained a physical injury outside of the PLRA context for him to be pursuing a case of excessive force. The fact that he, I mean, first of all, it's not quite accurate, because he was shot with a barb and electrocuted by a taser twice. So I think that's an injury. The fact that it didn't persist after it stopped doesn't change that analysis. All of the tasering cases that we cited, Mattos, Gravelin, Blondin, and the others, did not involve, you know, allegations that the person, well, that's not true of Mattos, but there are cases in which tasering occurred. No other harm associated with the tasering was alleged, and yet it was still determined to be an excessive rule, an excessive force. And so I don't think that's... And those all involve either traffic infractions or misdemeanors, not felonies. The cases that we cited, I believe they did not involve, none of them involved violent crimes at the very least. Whether or not they were misdemeanors or felonies, I didn't... I looked at them, I think they were all misdemeanors. Okay. Isn't that a problem for you in terms of qualified immunity? That the crimes for which he was suspected, I mean, the defendant concedes in their own motion that in the Graham analysis, that the factors weigh in favor of the plaintiff because they're nonviolent crimes. The Graham analysis is for the excessive force piece of it. We're talking about the qualified immunity, whether the law was clearly established. And so if you don't have a case where the facts are very similar to this, hasn't the Supreme Court told us that the officer is entitled to qualified immunity in that event? I think that the Supreme Court has held that. Whether or not the crimes for which the person is being prosecuted can be sliced so narrowly as to suggest that a nonviolent crime of forgery, which is a felony, versus that we're going to, for every subform of force that we use, we have to come up with a list of the crimes that the person is being charged with in order to determine... I'm not going to talk about that. I'm going to talk about the circumstances that were confronted by the officer. Right. The Supreme Court has said that when we look at the circumstances that were confronted by the officer, they have to be substantially similar to another case where we found excessive force in order for that law to be clearly established. So we would have to have a case where the officer knew that the perpetrator was likely to flee, that he was known to carry weapons, and nevertheless he found excessive force. And so that's the difficulty I'm having with your argument, is that I don't know that there's a case with facts similar to this that would put the officer on notice that what he did violated the law. Well, and I think the response to that is, I think that that argument is more compelling with respect to the first use of force that we're describing. So with respect to the crashing with the vehicles, I think that there's an argument to be made about what he believed about the past and his justification for preventing it. But the problem is, is that under Ninth Circuit precedent, you look at the actual circumstances confronting the officer at the time, but that cuts both ways. The circumstances confronting the officer in this case is a man sitting in the car doing nothing with his hands up. But you also include the facts known to the officer. You can't eliminate that piece of it when you're looking for clearly established law. I'm not attempting to eliminate it. What I'm just pointing out is that when you're trying to analyze the factual similarities between the cases, when you get to the point where the actual force is being imposed, as it was in this case, on a person who was sitting alone in a car, complying with police orders with his hands exposed, not resisting. We face similar situations with regard to dog bites. Canine releasing the canine where they were chasing an armed robbery suspect, and the suspect was otherwise just refusing to come out from where he was hiding when they sent the dog in. And we said that that was okay. Well, I think that the dissimilarity there is, one, there's a total absence of evidence here that Mr. Or rather, on summary judgment, we must conclude that there's no evidence, A, that Mr. Williams had barricaded himself in and was refusing to leave his vehicle, or B, that he was engaging in any kind of noncompliant or aggressive or hostile behavior that I think would, in the releasing the hounds scenario that you're mentioning, I think the problem is that we have here something that by the district court and opposing counsel, everybody apparently is in agreement that the conduct that occurred here occurred in a matter of a couple of seconds, that Baskett approached the car, holstered, smashed, tasered, tasered, and then pulled him through the window of the car. So that cuts both ways, too, because our case authority says, you know, these are split-second decisions that are made, and we shouldn't second-guess them with the luxury of hindsight. So that cuts both ways as well. And I agree, and I know I'm wildly beyond my time, but the only thing I would say is that there's clearly, you know, a caesura here in the action, which is car's pulled over, there's no way for him to flee, they knew that he was not going to be able to drive away because Baskett admits that it appeared that the transmission was locked based on the maneuver that he had performed. He was inside his vehicle. He shows up to the vehicle, and then he determines that he is complying, not resisting, and not reaching for any weapon. And then at that point, after he's done the deliberative process of concluding that, it's at that point that he actually unleashes the facts. Okay, I'm sorry. Thank you. Thank you to both counsel. The case is argued and submitted for decision by the court.
judges: TALLMAN, RAWLINSON, SUNG